No. 12863

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

H. R. MANGELS,

Defendant and Respondent.

---

Appeal from: District Court of the Twelfth Judicial District,
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas A. Budewitz, Assistant Attorney General, argued,
Helena, Montana
William Solem, County Attorney, Chinook, Montana
Stuart C. MacKenzie, Deputy County Attorney, argued,
Chinook, Montana

For Respondent:

Robert D. Morrison argued, Havre, Montana
Morrison, Ettien and Barron, Havre, Montana

---

Submitted: January 21, 1975

Decided: FEB 14 1975

Filed: FEB 14 1975

Thomas J. Kearney

Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Herbert R. Mangels was convicted in the justice court of Blaine County for driving while under the influence of intoxicating liquor. He appealed from that conviction to the district court. Prior to trial there, he filed a motion to suppress evidence of his blood alcohol level, derived from a blood sample taken shortly after the alleged offense. The motion was granted, and the State here appeals from that order.

The district court considered the motion to suppress solely on the basis of an agreed statement of facts and supporting memoranda by the parties. No further evidence or oral argument was received.

On the evening of August 26, 1973, defendant was involved in a two-vehicle collision on U.S. Highway No. 2, near Lohman, Montana. Only defendant was injured and, while he was awaiting transportation to a nearby hospital, the odor of alcohol was detected on his breath by the investigating highway patrolman.

Defendant arrived at the hospital by ambulance approximately forty-five minutes after the accident occurred. The nurse on duty noted "that the defendant appeared to be confused and was suffering from abrasions and contusions". At the request of the highway patrolman, the nurse prepared to take a blood sample for determining defendant's blood alcohol level. The nurse told defendant that she was going to draw his blood, but did not tell him her purpose in doing so. Defendant neither objected nor expressly consented to the taking of the sample. Analysis of that sample later revealed a .19 blood alcohol level.

The highway patrolman did not talk to defendant at any time prior to the taking of the blood sample. At no time had defendant been told that he was under arrest or that he was charged

- 2 -

with driving while under the influence of intoxicating liquor. In the patrolman's opinion, he did not arrest defendant, although he did give him a citation on the morning following the accident and the blood test. Several weeks later, a complaint was filed in justice court and a warrant for defendant's arrest was issued.

The district court held, in granting the motion to suppress, that since defendant had not been arrested and since he had not given his actual consent to the test, the taking of the sample was in violation of section 32-2142.1, R.C.M. 1947. This appeal presents that issue only.

The controlling statute, as cited in the district court's order, is section 32-2142.1, R.C.M. 1947. It provides:

> "(a)  Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of section 32-2142, R.C.M. 1947, to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood _if arrested_ by a peace officer for driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor. * * * The arresting officer may designate which of the aforesaid tests shall be administered.
>
> "(b)  Any person who is unconscious or who is otherwise in a condition rendering him incapable of refusal, shall be deemed not to have withdrawn the consent provided by paragraph (a) of this section.
>
> "(c)  If a person under arrest refuses upon the request of a peace officer to submit to a chemical test designated by the arresting officer as provided in paragraph (a) of this section, none shall be given. * * *."  [Emphasis added.]

The absence of an arrest is not disputed, but the State asserts that an arrest is not required under paragraph (b). Defendant argues that he was neither unconscious nor "otherwise in a condition rendering him incapable of refusal" and therefore paragraph (a) controls. Paragraph (a) clearly requires an arrest before the implied consent provision becomes operative. The requirement is clear, both on the face of the statute and in the

- 3 -

title of the original act. Sec. 1, Ch. 131, Laws of 1971. It is equally apparent that there is no similar requirement in paragraph (b).

Unless the facts before us establish the applicability of paragraph (b), we must affirm the district court's order suppressing the blood test for lack of a preceding arrest. Since there is no question as to defendant's consciousness, paragraph (b) can only apply if the defendant was "in a condition rendering him incapable of refusal".

The agreed facts are insufficient to bring this case within the provisions of paragraph (b). They do not establish that defendant was in a condition rendering him incapable of refusal. The nurse did not indicate in the hospital record that defendant was intoxicated.

The State attempts to meet that argument by asserting that the defendant's physical condition was so unstable that any questions by the patrolman would have been injurious. The agreed statement of facts does not support that argument.

Finally, the State urges our adoption of the rationale employed by the Florida court in State v. Mitchell (Fla. 1971), 245 So.2d 618. While the facts and statutes presented there are somewhat parallel to the instant case, we are not persuaded. Although here the State argues that the arresting officer must have discretion in making his determination of capacity, the result of the rationale employed by the Florida court is a vesting of too much discretion. The potential for abuse is manifest. The arresting officer, under the broad discretion there granted, need only find some fact on which to base a conclusion of incapacity, and then he need not arrest or request the test, before ordering its administration.

We do not mean to suggest that such abuse is likely in

- 4 -

Montana, but the potential for abuse outweighs any inconvenience which might result from a narrower construction. Section 32-2142.1, R.C.M. 1947, limits the officer's discretion to those cases where the subject is incapable of refusing the test. Here, we only require that the incapacity be determined on the basis of the best evidence which is reasonably available to the officer. The agreed statement of facts does not so indicate here.

Accordingly, we affirm the district court's order suppressing the results of the blood test.

_____
                        Justice

We concur:

_____
        Chief Justice

_____

_____
        Justices

Mr. Justice Wesley Castles dissenting:

I dissent. I would hold that evidence of the blood sample taken from defendant is admissible against him.

The opinion of the majority stands for the proposition that the highway patrolman or police officer on the scene does have the discretion to make the determination of whether the suspect is "in a condition rendering him incapable of refusal" but that, in this case, the agreed statement of facts was insufficient to support a finding that this defendant was "in a condition rendering him incapable of refusal". I would hold that the agreed statement of facts does support such a finding. The defendant was in the emergency room of the hospital. He was in a supine position at all times. The nurse on duty noted that defendant "appeared to be confused and was suffering abrasions and contusions." To have actually placed defendant under arrest at this time quite possibly could have worsened his physical and emotional condition. Public policy demands the liberal interpretation of laws concerning driving on public highways while under the influence of alcohol. The drunk driver is responsible for a great percentage of traffic deaths on the nation's highways. The "implied consent" law was enacted as a deterrent force to keep drunk drivers off the road. In order to give effect to the law, law enforcement officers must be able to use discretion in enforcing it. This is not an unbridled discretion, as the majority opinion would suggest, but is discretion reviewable at all times by the courts.

Wesley Castles
Justice