No. 80-288

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

OWEN ASA RUMLEY, JR.,

Defendant and Appellant.

Appeal from:  District Court of the Eleventh Judicial District,
In and for the County of Flathead.
Honorable James M. Salansky, Judge presiding.

Counsel of Record:

For Appellant:

K. M. Bridenstine, Polson, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Ted O. Lympus, County Attorney, Kalispell, Montana

Submitted on briefs: May 28, 1981

Decided: AUG 27 1981

Filed: AUG 27 1981

_____
Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

The defendant, Owen Asa Rumley, Jr., was charged on June 7, 1979, with negligent homicide under section 45-5-104, MCA, by an information filed in Flathead County District Court. Specifically, the information charged that the defendant's negligent operation of his motor vehicle caused the death of Margaret Beebe on May 12, 1979. Defendant pleaded not guilty and asserted the affirmative defense of mechanical defect. Defendant also filed a motion to suppress evidence of a blood alcohol test. After an evidentiary hearing, the motion was denied.

Defendant was found guilty of negligent homicide and sentenced to five years in the Montana State Prison. The sentence was suspended on the conditions that the defendant serve sixty days in the Flathead County jail, perform public service at the county nursing home for ten weeks, and undergo an evaluation at the Chemical Dependency Center in Kalispell. Defendant appeals his conviction.

On the afternoon of May 12, 1979, defendant was driving north on Highway 93 several miles south of Kalispell, Montana. He had just left a bar where he claimed he drank only two bourbon ditches.

According to the testimony of another driver on the road at the time, defendant's yellow pickup truck suddenly appeared in his rear view mirror. He testified that defendant blew his horn, and then passed his vehicle as well as the vehicle ahead of him, coming so close that he had to swerve to avoid being hit by the defendant. A few miles down the road, the driver and his wife came upon the scene of the collision which gave rise to this action.

An off-duty highway patrolman witnessed the collision as he was driving south on Highway 93. As the patrolman crossed the center line to see whether he could pass the vehicle ahead of him, he saw the defendant's pickup swerve across the center line and collide with a Buick sedan driven by Margaret Scherf Beebe. Margaret Beebe died as a result of the injuries she received in the accident.

Defendant testified that he was driving between 50 and 55 miles per hour when he saw a southbound vehicle pull into his lane in an attempt to pass another car. When he saw the other car, defendant slammed on his brakes leaving skid marks for 134 feet in the northbound lane. The marks indicate that defendant's pickup swerved into the southbound lane, and just before the collision, the marks indicate that the pickup swerved back toward the northbound lane. The highway patrolman who investigated the scene testified that in his opinion the defendant's pickup was traveling between 65 and 70 miles per hour at the time of the collision.

Numerous witnesses, including several highway patrolmen, an ambulance driver, and a nurse at the hospital where defendant was taken, testified that after the collision defendant smelled of alcohol and was confused and disoriented. Defendant was either unresponsive or incoherent when he did try to respond to questions. Even when others tried to explain to defendant what had occurred, he kept repeating, "What did I do?" or "What happened?"

At the hospital in Kalispell a blood sample was drawn from the defendant and sent to the criminal investigation lab in Missoula. The crime lab's analysis showed that defendant's blood alcohol level was 0.25 grams percent by

weight ethyl alcohol.

Defendant presents for review four specifications of error:

1. Denial of the defendant's motion to suppress;

2. Admission of the blood analysis at the trial;

3. Denial of the defendant's motion to dismiss or direct a verdict of acquittal; and

4. Limitation of the final argument to forty-five minutes.

Defendant argues that his motion to suppress should have been granted because he had not expressly consented to the taking of his blood and was not informed of the reason for its extraction. Further, defendant contends that he was not arrested prior to the time the blood sample was taken and, therefore, the taking of the blood was an improper search. These arguments are apparently made to show that the State failed to comply with subsection (1) of section 61-8-402, MCA.

Section 61-8-402, MCA, is Montana's implied consent statute, and subsection (1) of that section does require that a formal arrest be made prior to the taking of a blood sample. As this Court found in State v. Mangels (1975), 166 Mont. 190, 531 P.2d 1313, however, subsection (2) of section 61-8-402, MCA, does not require that a formal arrest be made if a person is "unconscious" or "otherwise in a condition rendering him incapable of refusal." See section 61-8-402(2), MCA. Here, the District Court found that at the time the blood sample was taken, the defendant was "in a condition rendering him incapable of refusal" of a blood test. A formal arrest was therefore not necessary, nor was

it possible at that time to obtain the express consent of the defendant.

Defendant's argument that he was not arrested fails also for the simple reason that the record supports a finding that an arrest was made. The investigating officer at the scene of the collision testified that he placed the defendant under arrest for driving under the influence of alcohol. Similarly, the officer who met defendant at the hospital when the ambulance arrived testified that he too had placed the defendant under arrest.

The test for determining whether a person is "in a condition rendering him incapable of refusal" was first set down in Mangels and recently affirmed in State v. Campbell (1980), ____ Mont. ____, 615 P.2d 190, 37 St.Rep. 1337. The Court in Mangels stated: "Here, we only require that the incapacity be determined on the basis of the best evidence which is reasonably available to the officer." 166 Mont. at 194, 531 P.2d at 1315.

In Mangels the results of a blood test were suppressed because the officers only had evidence of confusion on the part of the defendant, the defendant had minor injuries, and because the officers did not attempt to try to question the defendant. In Campbell the blood test was admitted into evidence because the officers could see that Campbell was seriously injured and in great pain, were advised by a nurse that it would be better not to try to talk to him, and could not get him to respond coherently when they did try to talk to him.

Here, the officer who investigated the scene of the collision, the ambulance driver, the officer at the

hospital, and a nurse in the emergency room where defendant was taken after the collision, all testified that defendant was confused and disoriented, that defendant kept repeating "What happened?" even after he was told what had happened, and that defendant was not coherent in his responses even when he realized he was being asked a question. As a result of the collision, defendant had a fractured jaw, a broken foot, a contusion on his chest that led to a collapsed lung, and multiple lacerations. In light of this evidence of incapacity, the District Court properly denied the motion to suppress, and the officer at the Kalispell hospital, unable to receive a coherent response from the defendant, properly requested that a blood sample be taken.

Defendant's second contention is that the District Court erred by admitting the blood analysis into evidence at trial. Defendant claims that the State failed to establish an adequate foundation for introduction of the blood analysis due to an asserted break in the chain of possession of the sample taken from defendant. Defendant claims more specifically that the chain of custody was broken because the officer in charge of taking the blood sample did not actually see the blood drawn from defendant.

The officer, standing in the doorway of the room where the blood was being drawn from defendant, saw a doctor and two nurses standing around the table where defendant lay. He did not see the actual drawing of blood. Nevertheless, one of the nurses who participated in the drawing of blood from defendant testified that she helped to draw the blood sample into a vial the officer had given her and gave that same vial to the officer. In light of this

nurse's testimony, the second claim of defendant lacks any merit.

In State v. Nelson (1978), 178 Mont. 280, 583 P.2d 435, quoting State v. Wong Fong (1925), 75 Mont. 81, 87, 241 P. 1072, 1074, this Court described the State's burden in establishing the chain of custody of certain evidence:

> "'It was not incumbent upon the state to prove that it could not have been tampered with. It was not necessary that all possibility of its having been tampered with should be excluded by affirmative testimony. [Citation omitted.] It was only necessary to identify the package, and to make a prima facie showing that there has been no substantial change in it to warrant its introduction into evidence.'" Nelson, 178 Mont. at 288, 583 P.2d at 439.

In Nelson the Court found that the presence of an unbroken seal and seal number saved the evidence from exclusion, in spite of an earlier misidentification of a misread seal number.

Here, the nurse who helped draw the blood from the defendant placed the blood in the glass vial given her by the officer; the officer sealed the vial and secured it in the sealed crime lab container. The seal on the vial and the container were intact when opened by the chemist at the Missoula crime lab. The intact seal and the testimony of the nurse who helped to draw the blood show that there was not a substantial change in the blood from the time it was drawn from defendant to the time it was analyzed. The chain of custody was not broken.

Defendant's third contention is that the District Court erred by denying his motion to dismiss or for a directed verdict of acquittal. Defendant claims that the evidence presented at trial was insufficient to support a

guilty verdict. More specifically, defendant claims that proximate cause was not sufficiently shown. Defendant claims that there remains the question of whether he steered his pickup into the oncoming lane or whether a mechanical defect brought him into the oncoming lane.

The officer who investigated the collision gave his opinion that defendant had steered his truck into the oncoming lane. Defendant presented testimony of a person trained as a metallurgist and an accident investigator, who gave the opinion that the pickup veered as a result of damage to a spring in the front end of the pickup.

It is the prerogative of the jury to decide the facts, and this Court must uphold such findings when they are supported by substantial evidence. As we stated in State v. Kirkaldie (1978), 179 Mont. 283, 587 P.2d 1298, 1305, 35 St.Rep. 1532, 1539, "[t]he jury is the fact-finding body and its decision is controlling. . . Given the required legal minimum of evidence, we will not substitute our determination of the facts for that of the jury. . . If substantial evidence is found to support the verdict, it will stand. . ." (Citations omitted.)

Contrary to defendant's claims, the record is replete with evidence sufficient to support a conviction of negligent homicide. Evidence presented at trial showed that the defendant was extremely intoxicated, driving carelessly just moments prior to the collision, and driving at an excessive speed. Such evidence is clearly sufficient to support the jury's finding that defendant's behavior was a gross deviation from the standard of reasonable care. See sections 45-2-101(31) and 45-5-104, MCA.

Defendant contends finally that the District Court erred by limiting closing argument to a period of forty-five minutes per side. Although the record does show that the closing argument was limited to forty-five minutes, there is no indication on the record that an objection was made by defense counsel at that time. Further, since there is no record of either the State's or the defendant's closing argument, we cannot determine whether defendant's rights were abridged by the time limitation.

As stated in State v. Musgrove (1978), 178 Mont. 162, 582 P.2d 1246, this Court will not consider issues which are not based upon a record to which the appellate court can look. A similar holding was made in State ex rel. Woodahl v. District Court (1975), 167 Mont. 514, 518, 540 P.2d 312, 314, where the record contained no indication of a motion to substitute a judge. The Court in State ex rel. Woodahl decided: "We will not consider representations of parties after the fact or representations dehors the records." Regardless of the possible merits of defendant's final contention, the District Court's time limitation must be upheld since we have no basis on which to review the allegation of error.

Affirmed.

_Gene B. Daly_

We concur:

_John Conway Harrison_

_James B. Morrison_

_Fred J. Weber_

_John C. Sheehy_
Justices

-10-