No. 81-302

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

_____

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JOHN WALL LAMB,

Defendant and Appellant.

_____

Appeal from: District Court of the Fifth Judicial District,
In and for the County of Beaverhead
Honorable Frank Blair, Judge presiding.

Counsel of Record:

For Appellant:

Dooling Law Office, Dillon, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
W. G. Gilbert, III, County Attorney, Dillon, Montana

_____

Submitted on briefs: March 18, 1982

Decided: June 10, 1982

Filed: JUN 1 0 1982

Thomas J. Kearney
_____
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant appeals from a judgment entered by the District Court of the Fifth Judicial District, Beaverhead County, upon a jury verdict in which defendant was found guilty of sexual intercourse without consent and aggravated kidnapping. Defendant was sentenced to a total of fifty years at the Montana State Prison, forty years for sexual intercourse without consent and ten years for aggravated kidnapping, to be served consecutively.

At about 12:30 a.m., September 3, 1980, Zane Tams, an eighteen-year-old woman, entered the Truck Inn Cafe in Dillon, Montana. She had had a few drinks with friends and stopped at the Truck Inn to eat.

Defendant, John Lamb, twenty-four years old, was also eating at the Truck Inn just after midnight on September 3.

Tams sat beside defendant at the front counter. They did not know each other and talked only briefly. After eating, Tams left the cafe.

Tams got into her car to go home and discovered it would not start.

Defendant testified that, at this time, Tams waved to him and asked him to help her with her car. Tams testified that defendant drove up next to her car and asked if she needed help.

Defendant checked under the car hood to find that the coil wire was missing. He said he might have an extra coil wire at his house and asked Tams if she would come with him to get it. She agreed. Instead of going to his home, defendant drove to a secluded place off a country road and had sexual intercourse with Tams. Needless to say, the

-2-

accounts of the defendant and Tams vary considerably as to what happened after Tams agreed to ride with defendant in his pickup.

Defendant testified that Tams initiated sexual advances toward him and that she encouraged and cooperated in the sexual intercourse. He then drove Tams back to the Truck Inn.

Tams testified that as they were driving in defendant's pickup, he kept saying that they would soon come to his house. Eventually, defendant turned onto a dark side road, pulled off the road and stopped the truck. He turned towards Tams and said that since he was doing a favor for her, she should do a favor for him.

Defendant then attacked Tams, grabbing her and jumping on her, causing her to hit her head against the passenger door of the truck. She resisted defendant's attack, but defendant forced her to have sexual intercourse. Tams testified that defendant hit her several times, one blow causing a cut on the inside of her mouth and swelling around her lip. After intercourse, and while defendant was outside of the truck putting on his pants, Tams dropped part of her key chain behind the truck seat. Before leaving the scene, defendant handed Tams a coil wire that happened to fit her car.

On the way back to town, Tams made a conscious effort to remember details about defendant and his truck, including the year, model and color of his pickup, that there was a large dent near the gas cap, and that he was carrying a yellow motorcycle. Defendant dropped her off near town, and she purposefully watched his truck leave, memorizing the

-3-

last four digits of his license number.

With her broken belt, coil wire and purse in her hands, Tams ran to a nearby trailer and yelled for help. A husband and wife occupied the trailer. Awakened by the yelling, the husband answered the door and let Tams in. The wife talked with Tams and tried to comfort her while the husband called the police.

The wife's testimony, in this case, is very telling. She testified with regard to Tams that her "hair was all messed up, her face was covered with mascara, her makeup was completely distorted, and she was, of course, crying like I said, very much, and the tear streaks were down her cheeks, her face and lips were quite puffy and very distorted." She testified further that Tams seemed hysterical but could respond to questions and kept repeating the last four digits of defendant's license plate number.

The police arrived and Tams described defendant, his truck, and repeated the license number. She was taken to a hospital where she was examined. She had a bruise on the inside of her right knee and bruises on her arms and upper chest. She also had a very noticeable bruise on her lip and a cut on the inside of her mouth. The next day, a bruise was discovered on the back of her head.

Defendant was arrested. The key chain belonging to Tams was found in his pickup. The seat cover was removed from his pickup and examined by forensic scientists. Experts testified that the stains on the seat cover were a mixture of semen and blood. Tams had been menstruating at the time of the incident.

Prior to trial, the District Court granted the

State's motion in limine prohibiting defense counsel or any witness from referring to past sexual conduct of the victim. Defense counsel objected to the motion on the grounds that there was potentially certain evidence indicating that the charges by Tams may have been motivated by a psychological syndrome resulting from a previous sexual assault.

Defendant raises four issues on appeal:

1. Whether there is sufficient evidence to support the conviction.

2. Whether the District Court erred by granting the State's motion in limine prohibiting reference to past sexual conduct of the victim.

3. Whether the District Court erred by permitting Tams to remain in the courtroom while defendant testified.

4. Whether the State unlawfully sequestered a subpoenaed witness who may have provided exculpatory testimony for the defense.

The conviction must be upheld because it is supported by substantial evidence and because the District Court properly prohibited reference to the victim's past sexual conduct, including a possible prior sexual assault.

The test for sufficiency of evidence is whether there is substantial evidence to support the conviction, viewed in the light most favorable to the State. State v. Wilson (1981), ____ Mont. ____, 631 P.2d 1273, 38 St.Rep. 1040. "'Substantial evidence' is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See, Wilson, 631 P.2d at 1278, and cases cited there.

Here, the record is replete with evidence to support

-5-

defendant's conviction: the testimony of Tams, the victim; the testimony of the wife who saw the victim when she came to her trailer for help; testimony of police officers who took Tams to the hospital; and the bruises on the victim's body. All this evidence is sufficient to support the jury's finding that Tams was forced to have sexual intercourse and that defendant inflicted bodily harm in the process.

Defendant contends in his second issue that the District Court erred by granting the State's motion in limine, thereby excluding evidence of the victim's past sexual conduct, including a possible prior sexual assault charge. Because such evidence should only be used when it is central to the outcome of the case, the District Court properly granted the State's motion in limine.

Section 45-5-503(5), MCA, provides:

"No evidence concerning the sexual conduct of the victim is admissible in prosecutions under this section, except:

(a) evidence of the victim's past sexual conduct with the offender;

"(b) evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy, or disease which is at issue in the prosecution under this section."

The purpose of this section is to preserve the integrity of the trial and to prevent it from becoming a trial of the victim. State v. Higley (1980), _____ Mont. _____, 621 P.2d 1043, 1050-1051, 37 St.Rep. 1942, 1949. In Higley, this Court acknowledged the justification for excluding evidence of specific acts of conduct:

"'This method of proof is the most persuasive of the three contained in the rule, and is also the most likely "to arouse undue prejudice, to confuse and distract, to engender time-consuming side issues and to create risk of unfair surprise." McCormick, Handbook of

the Law of Evidence, 443 (2d ed. 1972). As a result of the effect of this method of proof, it is generally restricted to situations where character is in issue, when such proof is central to the outcome of the case.' Commission Comments, Rule 405(b), Mont.R.Evid." 621 P.2d at 1051.

Here, the evidence neither controls the outcome of the case because of the overwhelming evidence supporting the victim's testimony, nor falls within the exceptions of section 45-5-503(5), MCA. The District Court therefore properly granted the State's motion in limine.

The next two issues raised by defendant can be taken care of summarily. Defense counsel made no objection to the presence of the victim in the courtroom while defendant testified. Absent the objection of defense counsel, the issue is not legitimately presented for review. State v. Owens (1979), ____ Mont. ____, 597 P.2d 72, 77, 36 St.Rep. 1182, 1188; and State v. O'Donnell (1972), 159 Mont. 138, 496 P.2d 299.

Concerning the last issue, there is nothing on the record about the sequestering of a witness. This Court will not consider issues without a record to which we can look. See, State v. Rumley (1981), ___ Mont. ___, 634 P.2d 446, 450, 38 St.Rep. 1351A, 1351F, and cases cited therein.

Finding substantial evidence on the record to support the conviction and no error on the part of the District Court, the judgment is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices