No. 81-290

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

MARET BROWN,

Defendant and Appellant.

Appeal from:   District Court of the Fourth Judicial District,
               In and for the County of Missoula
               Honorable James Wheelis, Judge presiding

Counsel of Record:

For Appellant:

Anthony F. Keast, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert L. Deschamps III, County Attorney, Missoula,
Montana

Submitted on briefs: June 15, 1982

Decided:  August 19, 1982

Filed:  AUG 1 9 1982

Thomas J. Kearney
                                    Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

The defendant, Maret Brown, appeals from a judgment issued by the District Court of the Fourth Judicial District, Missoula County, upon a jury conviction for felony theft as provided in section 45-6-301(3), MCA. Defendant was sentenced to eight years in the Montana State Prison with all but ninety days suspended.

This case arises out of the burglary of a mobile home owned by Robert White and located near Arlee, Montana. White had moved to Alaska with his family and left his mobile home to be sold by a real estate agent. In June 1980, the real estate agent discovered that someone had broken into the mobile home and garage. The agent notified the Lake County Sheriff's department and on June 30 went through the home with Lake County deputy sheriff, Randy Merryman.

On July 25, 1980, White found out in a conversation with his brother that the mobile home had been burglarized. White quit his job and moved his family back to Arlee, Montana. White and officer Merryman then went through the home and the garage, making a list of the personal property that was stolen, which included a welding torch owned by White.

White told an acquaintance, Jim Fleischauer, that his torch had been stolen. A couple of weeks later, Fleischauer telephoned White and told him that he had his torch. Fleischauer said he had purchased the torch from one Louis Goodsell. White and Fleischauer went to see Goodsell. Goodsell said he had purchased the torch from the defendant, Maret Brown.

According to the testimony of White, Fleischauer, and Goodsell, the three then went to the house of the defendant, Maret Brown. They went up on defendant's closed-in porch and knocked on his door. When Brown answered the door, White introduced himself and asked defendant if he had a receipt for the torch he had sold Goodsell. Defendant said he had a receipt and invited White inside the house. White refused, saying he would remain on the porch.

While on the porch, White noticed that some of his stolen belongings, sleeping bags, air mattresses, a grinding wheel, a shovel, and a red box, were lying in the corners of the porch. White told Fleischauer and Goodsell to go get a search warrant.

Fleischauer and Goodsell returned with a deputy sheriff but no search warrant. The officer asked defendant if they could search his house; defendant refused. The officer then went to get a search warrant.

A search warrant was obtained upon information given by White. Several officers and White returned to defendant's house late that evening and completed the search. White accompanied the officers in the search. The officers seized all the items that they felt White had positively identified. Defendant was very upset when the officers came to the house and stated that he owned everything on the porch. A short time into the search, after White had identified a few personal items such as a blender and an iron that had a personal inscription on it, defendant was arrested.

The sole issue raised by defendant on appeal is whether a warrantless search conducted by White, Fleischauer and Goodsell was in violation of defendant's rights under the Fourth Amendment of the United States Constitution, and defendant's right of privacy as provided in Section 10, Art. II of the Montana Constitution.

It is very important here to note that defendant does _not_ raise the issue based upon the facts related above. He does not claim that an unconstitutional search occurred when White and his companions were invitees on the defendant's porch and saw several of White's possesions in plain view.

Rather, defendant claims that the unconstitutional search occurred earlier in the afternoon. The only evidence on the record that White and his companions were at the defendant's residence earlier in the afternoon comes from the testimony of the defendant's father. The father of the defendant testified as

- 3 -

follows:

"Q. What time in the afternoon did you observe something, and tell us what you observed? A. Oh, it was around one, two o'clock somewheres in there, maybe a little later, I noticed a car drive up to Goodsell's. Two guys got out and walked over to Goodsell's house. Louis came out and they talked. From there they went to Maret's house.

"Q. They? Who's they? A. The two guys that got out of the car was White and Fleischauer, or whatever you call him, and Louis Goodsell.

"Q. The three of them? A. Three of them, yes.

"Q. What happened, then? A. They went down to Maret's house. They went in, White and Goodsell went in the porch.

"Q. Did you see them go into the door? A. Yes, I did.

"Q. What made it interesting that you would watch them? A. Maret was not home at that time, and I didn't know what was going on. I was curious.

"Q. Did you watch it? A. I watched them.

"Q. How long were they in there? A. Five to ten minutes.

"Q. That's inside at least, inside the porch? A. They was inside out of sight on the porch.

"Q. When they came out, did you say anything to them? A. No. They went over to Goodsell's to their car.

"Q. Then what did you observe? A. Well, they stood there and talked, and finally they went back. I don't know, I think they drove out onto Stone Street.

"Q. Did you have occasion that day to see those men, again? A. Yeah, later on that day they returned. I noticed one with the sheriff, and Maret was home at that time."

The above testimony does not support a claim that White and his companions conducted a search of defendant's residence. The father's testimony only indicates that White and his companions may have entered defendant's porch and were there for five to ten minutes. Nothing on the record suggests that a search took place during this time. The conviction must therefore be affirmed since "[w]e will not consider representations of parties after the fact or representations dehors the records." State ex rel

- 4 -

Woodahl v. District Court (1975), 167 Mont. 514, 518, 540 P.2d 312, 314. See also State v. Rumley (1981), ____ Mont. ____, 634 P.2d 446, 38 St.Rep. 1351A; and State v. Lamb (1982), ____ Mont ____, 646 P.2d 516, 39 St.Rep. 1621. The judgement of the District Court is affirmed.

_____
Gene B Daly

We concur:

_____
Frank I. Haswell
Chief Justice

_____
John Conway Harrison

_____
John C. Sheehy

_____
Daniel J. Shea

_____
Fred J. Weber
Justices

I concur in the result