No. 96-081

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

       Plaintiff and Appellant,

  v.

GREGORY S. STUECK,

       Defendant and Respondent.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           Hon. Joseph P. Mazurek, Attorney General,
           Barbara C. Harris, Ass't Attorney General,
           Helena, Montana

           Mike Salvagni, Gallatin County Attorney,
           Jane Mersen, Deputy County Attorney,
           Bozeman, Montana

       For Respondent:

           Karl P. Seel, Attorney at Law, Bozeman, Montana

FILED

DEC 09 1996

Filed:

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs:  July 18, 1996

Decided:  December 9, 1996

Justice Karla M. Gray delivered the Opinion of the Court.

The State of Montana (State) appeals from the order of the Eighteenth Judicial District Court, Gallatin County, suppressing blood alcohol evidence obtained from Gregory S. Stueck (Greg). We affirm.

The dispositive issue on appeal is whether the District Court erred in concluding that Montana's implied consent statute applies to a negligent vehicular assault prosecution so as to preclude the admissibility of blood sample evidence forcibly drawn after Greg refused to submit to a blood alcohol test.

Shortly before midnight on January 19, 1995, Montana Highway Patrol Officer Joseph Campbell (Campbell) was traveling east on Interstate 90 near Belgrade, Montana. He observed what appeared to be a large cloud of either smoke or steam developing approximately three-quarters of a mile ahead of him in the westbound lanes of traffic. As he approached the scene, Campbell saw a vehicle emerge from the cloud; the vehicle itself was trailing a huge cloud of steam and traveling west toward the Belgrade interchange. It appeared to Campbell that an accident had just occurred.

As Campbell approached the accident site, he saw a pickup truck in the median, a man staggering near the pickup and debris from the accident littering the median and the highway. The dazed man, Eric W. Troth (Troth), was the driver of the disabled pickup in the median; he had sustained a substantial bump on the back of his head. Campbell theorized that the vehicle he had seen emerge

2

from the vaporous cloud was responsible for the accident. Observing a "fluid trail" heading west on the highway from the point of impact, Campbell put Troth in his patrol car and they began following the fluid trail toward the Belgrade interchange.

Campbell and Troth followed the fluid trail until it led them off the highway and down several local roads; it then tapered off to a point where Campbell was unable to detect its direction. With an injured man in his car and debris from the accident still littering the highway, Campbell decided that his best course of action was to return with Troth to the accident scene. He did so and immediately began clearing the highway and investigating the accident. After a wrecker arrived and lifted Troth's pickup, Campbell detected a powder blue paint transfer on Troth's dark-colored pickup which appeared to have been left by the vehicle responsible for the accident.

Officer Dennis DeLaittre (DeLaittre) responded to the accident scene five to ten minutes after Campbell and Troth's return. DeLaittre began following the fluid trail down and off the highway and, eventually, to Amsterdam Road. DeLaittre could see where the vehicle leaving the fluid trail had made a right turn off of Amsterdam Road onto Thorpe Road. The fluid trail became more infrequent, often was in the wrong lane and ultimately consisted of an accumulation of fluids deposited from the vehicle after it either hit a bump or braked for a corner. About that time, Campbell radioed DeLaittre that a baby blue paint transfer had been found on Troth's pickup.

3

DeLaittre continued down Thorpe Road. When the road surface changed to gravel, he followed a single set of tire tracks visible in the early morning frost to where a vehicle appeared to have skidded on the roadway, backed up and pulled into a driveway. DeLaittre observed a "baby blue Ford pickup truck with extensive front-end damage on the driver's side" in the driveway, and radioed Campbell that he had located the vehicle.

Campbell met DeLaittre at the driveway entrance to the residence on Thorpe Road where the baby blue Ford pickup was parked. Before approaching the house, the officers radioed the dispatch office for a registration check on the pickup. Dispatch called the registered owner, Don Stueck, who reported that his son Greg had been using the pickup; he also provided Greg's telephone number.

The sheriff's office telephoned Greg's home in the early morning hours of January 20, 1995, and reached Greg's wife, Kristy Stueck (Kristy). She was asked to go outside to talk to two officers who were parked in her yard. Kristy complied and Campbell and DeLaittre left their patrol cars and met her at the front door. After explaining to Kristy that an accident had occurred, the officers asked her if she had been driving or if Greg had been driving and if Greg had been drinking. When she answered that Greg had been driving the truck, they asked her to have Greg come to the door. Kristy responded that he was sleeping and she was unable to wake him. The officers returned to their patrol cars and, after Kristy's second attempt to awaken him, Greg came to the door.

4

According to Campbell, Greg motioned the officers to the house and eventually called them inside.

Campbell could smell the strong odor of alcohol on Greg at the outset of the interview and observed that Greg started "fumbling and trying to pull his boots on which took quite a bit of effort and concentration . . . ." Greg initially told Campbell and DeLaittre that his friend "Bill" had been driving the pickup that night, but that he did not know Bill's last name. Greg then left the house abruptly and walked outside to the truck to find his registration and proof of insurance; the officers followed. After further questioning, Greg admitted that he had been driving the truck and had fallen asleep at the wheel. When he felt the impact of the accident, Greg panicked and drove away from the scene.

Greg was arrested for three misdemeanor traffic violations, including negligent vehicular assault, and transported to Bozeman Deaconess Hospital. The officers did not advise Greg of the terms of the implied consent statute, but did request a blood sample to determine his blood alcohol content. When Greg refused to give a blood sample, it was taken from him forcibly.

The State charged Greg in Gallatin County Justice Court with negligent vehicular assault, failure to stop at the scene of an injury accident and failure to give immediate notice of an injury accident. Greg moved to suppress the evidence seized from his Ford pickup and his residence, as well as "[t]he blood sample forcibly withdrawn . . . at Bozeman Deaconess Hospital," and to dismiss the charges. Following a hearing, the Justice Court suppressed the

evidence resulting from the forced blood drawing, but denied Greg's motion to dismiss. The State appealed, and Greg cross-appealed, to the District Court.

The District Court granted Greg's motion to suppress the blood sample evidence and denied the rest of his motions. The State appeals from the District Court's suppression of the blood sample evidence.

> Did the District Court err in concluding that Montana's implied consent law applies to a negligent vehicular assault prosecution so as to preclude the admissibility of blood sample evidence forcibly drawn after Greg refused to submit to a blood alcohol test?

In granting Greg's motion to suppress the blood sample evidence, the District Court rejected the State's contention that State v. Thompson (1984), 207 Mont. 433, 674 P.2d 1094, rendered § 61-8-402, MCA, inapplicable to any offense other than driving under the influence of alcohol (DUI). The court distinguished Thompson, concluding that § 61-8-402, MCA, Montana's implied consent statute, applies to the charge of negligent vehicular assault and, as a result, that the blood sample evidence is inadmissible because it was taken in violation of the statute. Where a district court grants a motion to suppress based on legal conclusions, we review those conclusions to determine whether they are correct. State v. Williams (1995), 273 Mont. 459, 462, 904 P.2d 1019, 1021 (citation omitted).

We begin our analysis by focusing on § 61-8-402, MCA, Montana's implied consent statute. Section 61-8-402, MCA, provides, in pertinent part:

6

(1) A person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent, subject to the provisions of 61-8-401, to a test or tests of the person's blood, breath, or urine for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body <u>if arrested by a peace officer for driving or for being in actual physical control of a vehicle while under the influence of alcohol</u>, drugs, or a combination of the two. . . .

. . . .

(3) <u>If a driver under arrest refuses</u> upon the request of a peace officer to submit to a test or tests designated by the arresting officer as provided in subsection (1), <u>a test may not be given</u>, but the officer shall, on behalf of the department, immediately seize the person's driver's license. . . . [Emphasis added.]

In interpreting a statute, we look first to the language used therein by the legislature. State v. Gould (1995), 273 Mont. 207, 219, 902 P.2d 532, 540. "Where the language is plain, unambiguous, direct, and certain, the statute speaks for itself . . . ." <u>Gould</u>, 902 P.2d at 540 (citation omitted).

According to the plain and unambiguous language used, § 61-8-402(1), MCA, applies when the defendant has been arrested for committing the DUI offense set forth in § 61-8-401, MCA. In such an event, a defendant's refusal to submit to a blood alcohol test mandates that the test "may not be given." Section 61-8-402(3), MCA. Moreover, blood samples drawn in violation of the implied consent statute are inadmissible as evidence in prosecutions for DUI. <u>Thompson</u>, 674 P.2d at 1095 (citing State v. Mangels (1975), 166 Mont. 190, 531 P.2d 1313).

Here, Greg was not arrested for violating § 61-8-401, MCA, the statute defining the offense of DUI. He was arrested, however, for

7

committing the misdemeanor offense of negligent vehicular assault in violation of § 45-5-205, MCA. A person commits that offense if he or she (1) operates a vehicle in a negligent manner; and (2) is driving while under the influence of alcohol or drugs, "as provided for in 61-8-401(1)[;]" and (3) his or her conduct is the cause of bodily injury to another. Section 45-5-205(1), MCA. Thus, the DUI offense set forth in § 61-8-401, MCA, is a specific element of--and subsumed in--the negligent vehicular assault offense. As a result, it is clear that, in the language of § 61-8-402(1), MCA, Greg was "arrested by a peace officer for driving or for being in actual physical control of a vehicle while under the influence of alcohol . . . ." Consequently, we conclude that § 61-8-402(3), MCA, prohibited the State from forcibly giving the blood test after Greg refused to submit to it and the blood sample evidence drawn in violation of the statute is inadmissible. Thompson, 674 P.2d at 1095.

The State correctly points out that, in Thompson, we held § 61-8-402, MCA, inapplicable to a negligent homicide prosecution. It contends, therefore, that Thompson renders § 61-8-402, MCA, inapplicable to the negligent vehicular assault charge at issue here and does not preclude the admissibility of the blood sample taken without Greg's consent. The State reads Thompson too broadly.

In Thompson, the defendant was charged with negligent homicide, which is statutorily defined as negligently causing the death of another human being. Section 45-5-104, MCA. He did not

8

consent to the taking of a blood sample for purposes of determining the alcohol content in his blood; nonetheless, the sample was taken. The defendant moved for suppression of the blood sample on the basis that it had been drawn against his will in violation of § 61-8-402, MCA, and, therefore, was inadmissible. The district court refused to suppress the evidence, it was admitted at trial and the defendant was convicted of negligent homicide. Thompson, 674 P.2d at 1095. The issue before us on appeal was whether the prohibition against nonconsensual extractions of blood samples in § 61-8-402, MCA, applied to prosecutions for negligent homicide. If the prohibition applied, the blood sample drawn in violation of the statute was inadmissible and should have been suppressed. Thompson, 674 P.2d at 1095.

We ultimately concluded, based on three considerations, that § 61-8-402, MCA, did not apply to negligent homicide convictions. Thompson, 674 P.2d at 1096. First, and most importantly, we focused on the legislative intent as reflected in the language of the statute. Highlighting the "if arrested by a peace officer for DUI" language, we concluded that the protections afforded by the § 61-8-402, MCA, prohibition against nonconsensual blood drawings are "not engaged until there is an arrest for driving under the influence." Thompson, 674 P.2d at 1096. Next, we reviewed decisions from other jurisdictions having implied consent laws similar to Montana's and determined that "the better reasoned cases hold that the statute does not apply to negligent homicide cases." Thompson, 674 P.2d at 1096-97 (citations omitted). Finally, we

9

addressed the gravity of the charged offense and opined that, where a death had been caused by a drinking driver, a driver's license suspension was an insufficient penalty for refusing to submit to a chemical analysis. Thompson, 674 P.2d at 1097.

Applying the three Thompson considerations to this case involving an arrest for negligent vehicular assault, rather than negligent homicide, mandates a different result and clearly indicates that Thompson is distinguishable. There, we began by applying the plain meaning of the "arrest for DUI" language in § 61-8-402, MCA, to the negligent homicide charge at issue. Thompson, 674 P.2d at 1095-96. As noted above, the offense of negligent homicide is defined as negligently causing the death of another human being. See § 45-5-104, MCA. Nothing in that definition relates in any way to operating a vehicle while under the influence of alcohol. Accordingly, we properly concluded in Thompson that the legislature did not intend the protections afforded by § 61-8-402, MCA, to apply to an arrest for negligent homicide because the statutory language was inapplicable "until there is an arrest for driving under the influence." Thompson, 674 P.2d at 1096. Here, as discussed above, the negligent vehicular assault charge includes, as a specific element, driving while under the influence of alcohol as set forth in § 61-8-401, MCA. See § 45-5-205(1), MCA. Thus here, unlike in Thompson, there has been an arrest for DUI and the protections afforded by § 61-8-402, MCA, are engaged.

Having concluded, under the statutory interpretation

10

consideration which necessarily was our primary concern in Thompson, that § 61-8-402, MCA, applies to an arrest for negligent vehicular assault, the remaining Thompson criteria are of limited significance. With regard to the "other jurisdictions" consideration from Thompson, the State cites to State v. Woolery (Idaho 1989), 775 P.2d 1210, and State v. Armenta (Or.App. 1985), 702 P.2d 1113, in support of its position that § 61-8-402, MCA, is not applicable to non-DUI offenses. Those cases are readily distinguishable from the case presently before us and, therefore, they do not support the State's position here.

In Woolery, the Idaho Supreme Court's primary focus was not whether the statute applied to the offense charged. Rather, the Idaho court focused on the absence of any statutory language prohibiting a nonconsensual blood test in the event a requested test was refused. Woolery, 775 P.2d at 1214. The court ultimately determined that no statutory right to refuse had been created and, therefore, compliance--or lack thereof--with the implied consent statute was irrelevant to the admissibility of the blood test evidence so long as the constitutional requisites for a lawful search and seizure were met. Woolery, 775 P.2d at 1214-15. Woolery has no application here where § 61-8-402(3), MCA, expressly provides that a test may not be given if it has been refused and, as a result, our cases hold that a nonconsensual drawing of blood following a § 61-8-402, MCA, refusal to submit to the test renders the blood test evidence inadmissible. See, e.g., Thompson, 674 P.2d at 1095.

11

In Armenta, the defendant was charged with DUI and assault II following an accident which resulted in injuries. Armenta, 702 P.2d at 1113. The trial court suppressed blood test evidence in connection with both charges as a consequence of an invalid consent under the implied consent statute, and the state appealed only the inadmissibility of the evidence vis-a-vis the assault charge. Armenta, 702 P.2d at 1114. The Oregon Court of Appeals applied the statutory language specifically rendering the statute inapplicable to non-DUI offenses, and concluded that the blood test was admissible as to the assault charge assuming compliance with constitutional requirements. Armenta, 702 P.2d at 1114. Thus Armenta, like Thompson, limited the applicability of the implied consent statute to a DUI charge. Like Thompson, and for the reasons set forth above, Armenta is distinguishable from the present case involving an arrest for the offense of negligent vehicular assault, which includes DUI as a specific element, and which, therefore, constitutes an arrest for DUI pursuant to § 61-8-402(1), MCA.

The final Thompson consideration was the gravity of the charged offense and we observed, in that regard, that the negligent homicide offense at issue involved the death of a human being. Thompson, 674 P.2d at 1097. Indeed, negligent homicide is a felony offense punishable by imprisonment in the state prison for up to ten years and a fine of up to $50,000, or both. See §§ 45-2-101(22) and 45-5-104(3), MCA. In the case presently before us, however, negligent vehicular assault is a misdemeanor offense with

12

maximum punishments of one year imprisonment in the county jail and a fine of $1,000, or both.  See §§ 45-2-101(41) and 45-5-205(2), MCA.  Thus, while we agree with the State that this consideration is of very limited significance in light of the paramount importance of statutory interpretation in this case, its application here further distinguishes Thompson and weighs in favor of our conclusion that § 61-8-402, MCA, applies to an arrest for negligent vehicular assault.

We hold that the District Court did not err in concluding that § 61-8-402, MCA, applies to a negligent vehicular assault prosecution so as to preclude the admissibility of blood sample evidence drawn in violation of the statute and also did not err in suppressing that evidence.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

13

Justice Karla M. Gray, specially concurring.

While the Court's opinion adequately addresses the matters raised in Justice Erdmann's dissenting opinion, I write separately to add additional comments about several of the arguments contained therein.

First, the dissent states that the Court cites no cases which support its position. In this regard, I observe only that it is not necessary for this Court to cite "other jurisdiction" cases in support of a straightforward analysis of Montana statutes and case law such as the Court has conducted here.

Next, the dissent quotes from Zielke, a Wisconsin case relied on by the State in addition to the Armenta and Woolery cases discussed in the Court's opinion. The Wisconsin implied consent statute at issue in Zielke, however--like the Idaho implied consent statute at issue in Woolery--did not contain language prohibiting a nonconsensual blood test in the event a requested test was refused. See Zielke, 403 N.W.2d at 429. Thus, like Woolery, Zielke is not applicable here where § 61-8-402(3), MCA, expressly provides that a test "may not be given" once it has been refused by the arrestee. As discussed in the Court's opinion, it is this specific portion of Montana's implied consent statute which renders inadmissible evidence resulting from a nonconsensual drawing of blood following a § 61-8-402, MCA, refusal to submit to the test and which negates the propriety of addressing the issue of the constitutionality of the seizure of Greg's blood which the dissent

14

would reach in this case.

Finally, while I do not disagree that the Court's resolution of this case may appear to allow defendants in alcohol or drug-related accidents to use the implied consent statute as a "shield," I disagree with the dissent's view that this Court can simply ignore the statutory language in order to produce a politically expedient result. The State's "remedy" lies with the legislature, which is free to amend the implied consent statute as other state legislatures have done, not with this Court.

_____
Justice

15

Justice Charles E. Erdmann dissenting.

I respectfully dissent from the majority's conclusion that the implied consent law, § 61-8-402, MCA, apples to a negligent vehicular assault prosecution. The majority's opinion allows the implied consent law to be used as a shield by defendants in alcohol or drug-related accidents and allows them to prevent the introduction of otherwise admissible evidence of chemical impairment. Further, although not reached by the majority, I would conclude that a warrantless search was appropriate under these circumstances and that the seizure of blood did not violate Greg Stueck's right of privacy. I would reverse the District Court on all three of these issues and remand the matter for trial.

The District Court granted Greg's motion to suppress the blood sample evidence by finding that State v. Thompson (1984), 207 Mont. 433, 674 P.2d 1094, does not apply when a charge of negligent vehicular assault is brought. In Thompson, this Court held that the implied consent law did not apply to a negligent homicide charge. In reaching that conclusion, the Court first reviewed the language of the implied consent law, and then employed a three-step analysis to determine whether that law should apply to charges other than DUI.

Given the clear language of § 61-8-402, MCA, it is questionable whether the analysis need go any further than a reading of the statute. This basic statutory construction analysis

16

is the first of the Thompson criteria. Section 61-8-402, MCA, provides in pertinent part:

(1) A person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent, subject to the provisions of 61-8-401, to a test or tests of the person's blood, breath, or urine for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body if arrested by a peace officer for driving or for being in actual physical control of a vehicle while under the influence of alcohol, drugs, or a combination of the two.

(Emphasis added.) Section 61-8-401, MCA, referenced in the implied consent statute, is the statute that prohibits DUI. By the clear language of the statute itself, it is applicable only to cases involving an arrest for DUI. As this Court recently noted in State v. Gould (1995), 273 Mont. 207, 902 P.2d 532:

In interpreting a statute, we first look to the plain meaning of its words. *Christensen*, 877 P.2d at 469 (citation omitted). If the legislative intent can be ascertained from the plain meaning of the words used, no further interpretation is required and we will not resort to legislative history. *Clarke v. Massey* (1995), [271 Mont. 412], 897 P.2d 1085, 1088. Where the language is plain, unambiguous, direct, and certain, the statute speaks for itself and there is no need to resort to extrinsic means of interpretation. *Christensen*, 877 P.2d at 469 (citation omitted). In addition,

[i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted . . . .

Section 1-2-101, MCA.

Gould, 902 P.2d at 540.

As correctly recognized by the majority, the plain, unambiguous language of § 61-8-402, MCA, makes the statute

17

applicable only where there has been an arrest for DUI. As Greg was not arrested for DUI, the only logical conclusion is that the implied consent statute does not apply. The majority, however, holds that § 61-8-402, MCA, applies to a charge of negligent vehicular assault, and in doing so, concludes that an arrest for negligent vehicular homicide constitutes an arrest for DUI.

While the majority is correct in noting that driving under the influence of alcohol or drugs is one of the elements of the negligent homicide statute, that does not make an arrest for negligent vehicular assault an arrest for DUI. The Legislature could easily have extended the provisions of the implied consent statute to both vehicular homicide and negligent vehicular assault, but has chosen not to do so. In concluding that an arrest for negligent vehicular assault constitutes an arrest for DUI, the majority has inserted provisions into § 61-8-402, MCA, that were omitted by the Legislature. That is not the proper function of this Court.

As noted, the first of the Thompson criteria deals with legislative intent and statutory interpretation, which is discussed above. As the plain language of the statute is clear, I do not believe that further analysis is necessary. However, even if the second and third Thompson criteria are utilized, the result is the same.

In Thompson, this Court stated:

> We find that Section 61-8-402 does not apply to negligent homicide prosecutions. This conclusion is

18

based on three considerations. First we consider the legislative intent. "Legislative intent must first be determined from the plain meaning of the words used; and if the language is plain, unambiguous, direct, and certain, the statute speaks for itself." *Crist v. Segna* (Mont. 1981), 622 P.2d 1028 at 1029, 38 St.Rep. 150 at 152, citing *Dunphy v. Anaconda Co.* (1968), 151 Mont. 76, 438 P.2d 660. The language of the statute and an examination of the statutory scheme of Title 61, Chapter 8, part 4 plainly show that application of the implied consent law to negligent homicide cases was not within the legislature's contemplation. The operative language of Section 61-8-402 reads,

> "Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, *subject to the provisions of 61-8-401*, to a chemical test of his blood, breath, or urine for the purpose of determining the alcohol content of his blood *if arrested by a peace officer for driving or in actual physical control of a motor vehicle while under the influence of alcohol*." (emphasis supplied)

The italicized passage above makes it clear that the protections afforded there are not engaged until there is an arrest for driving under the influence. (But, see *State v. Campbell* (Mont. 1980), 615 P.2d 190, 37 St.Rep. 1337, where we held that an arrest is not always a prerequisite to administration of a blood alcohol test.) Not only is the section specifically premised on such an arrest, but it is made subject to the section of the code which outlines the offense of driving under the influence of alcohol or drugs. . . . This Court does not have the power to remove or ignore language in a statute.

The second consideration is how similar implied consent laws have been interpreted in other jurisdictions. . . . [W]e feel the better reasoned cases hold that the statute does not apply to negligent homicide cases. Relying on the plain wording of the statute, these cases held that applying the implied consent laws to negligent homicide prosecutions was not what the legislature had intended.

The third consideration also weighed heavily on the courts deciding the cases cited immediately above; suspension of the driver's license is simply an insufficient penalty for refusing to submit to a chemical

19

analysis when there has been a death caused by the drinking driver. The gravity of the crime heightens the importance of the blood sample, and it appears the legislature felt the administrative remedy was simply inappropriate. The decision to modify the scope of the implied consent law properly rests within the legislature's power. It is not within our power to read into a statute more than is found there, as appellant would have us do. Therefore, we hold that Section 61-8-402 does not apply to suspects in negligent homicide prosecutions.

Thompson, 674 P.2d at 1096-97 (citations omitted).

The Court's discussion of the first Thompson criteria provides additional support for the conclusion that the Legislature did not intend the implied consent law to apply to charges other than DUI. The protection afforded by the implied consent law simply is not triggered until there has been an arrest for DUI. In this case, there was no arrest for DUI.

After reaching its conclusion that the Legislature intended that an arrest for negligent vehicular assault constitutes an arrest for DUI, the majority then determines that the remaining two Thompson criteria are of limited significance. This is not surprising since, after attempting to distinguish the cases from other jurisdictions which support the State's position, the majority can cite no cases which support its position. State v. Woolery (Idaho 1989), 775 P.2d 1210; State v. Armenta (Or. Ct. App. 1985), 702 P.2d 1113; State v. Zielke (Wis. 1987), 403 N.W.2d 427.

The third Thompson criteria addresses the gravity of the crime. The majority notes that vehicular homicide involves the death of an individual and is a felony, while negligent vehicular

20

assault is merely a misdemeanor. While conceding that this criteria is of very limited significance, the majority relies on it for further support of its conclusion that § 61-8-402, MCA, applies to an arrest for negligent vehicular assault. The Thompson case did not make any distinction between felonies and misdemeanors and that is a troublesome distinction to create. Further, it cannot be disputed that negligent vehicular assault is a serious crime for which the mere sanction of having a license temporarily suspended is an insufficient penalty.

The negligent vehicular assault statute requires that a person: (1) operate a vehicle in a negligent manner; (2) while driving under the influence of alcohol or drugs; and that (3) his or her conduct is the cause of bodily injury to another. Section 45-5-205, MCA. Under the majority's rationale, if the victim in this case would have died, the implied consent law would not have applied, but if the victim were only injured, seriously or otherwise, it would apply. Such a judicially created distinction is not warranted and places an unreasonable burden on law enforcement officers who investigate accidents involving alcohol or drugs.

Whether applying the basic rules of statutory interpretation, or utilizing the Thompson criteria, it is clear that the Legislature did not intend that an individual involved in an alcohol or drug-related traffic accident be able to use the implied consent law as a shield to prevent evidence of chemical impairment

21

to be introduced at trial. As noted by the Wisconsin Court in Zielke:

> The implied consent law is an important weapon in the battle against drunk driving in this State. Neither the law, its history or common sense allows this court to countenance its use as a shield by the defense to prevent constitutionally obtained evidence from being admitted at trial.

Zielke, 403 N.W.2d at 434.

While not addressed by the majority, I would conclude that the seizure of blood in this case was a reasonable seizure and did not violate Greg's privacy interests. By the time the officers reached Greg's residence, approximately one hour and twenty-five minutes had passed since the accident. The additional time in obtaining a search warrant in the middle of the night would have resulted in further dissipation of Greg's blood alcohol content and the loss of valuable evidence. The means and procedures employed in taking the blood were reasonable. Schmerber v. California (1966), 384 U.S. 757.

While this Court has recognized that Montana has a broad right of privacy in Article II, Section 10, of the Montana Constitution, the right of privacy contained in that provision is to be weighed against any applicable state interest. State v. Brown (1988), 232 Mont. 1, 755 P.2d 1364; State ex rel. Zander v. District Court (1979), 180 Mont. 548, 591 P.2d 656. Here, the State's interest is to enforce the criminal and traffic laws which protect all citizens, and specifically in this case, to apprehend and appropriately punish the person who rear-ended the Troth vehicle

22

and then left the scene of an injury accident.  I would find these interests to be compelling and outweigh Greg's right of privacy associated with his blood.

For the foregoing reasons I would reverse the District Court and remand this matter for trial.

_____
Justice

Chief Justice J. A. Turnage, dissenting:

I concur with the dissenting opinion of Justice Erdmann. I write further and in addition thereto.

The correct decision in this case requires an analysis of three separate statutes. The majority has failed to analyze correctly these operative statutes which are in their essential parts set forth as follows:

> **61-8-401.** (1) It is unlawful and punishable as provided in 61-8-714 and 61-8-723 [penalty for driving under the influence of alcohol] for any person who is under the influence of:
> (a) alcohol to drive or be in actual physical control of a vehicle upon the ways of this state open to the public;
> . . . .
> (3) "Under the influence" means that as a result of taking into the body alcohol, drugs, or any combination thereof, a person's ability to safely operate a motor vehicle has been diminished.
> (4) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person driving or in actual physical control of a vehicle while under the influence of alcohol, the concentration of alcohol in the person at the time alleged, as shown by analysis of the person's blood, urine, or breath, shall give rise to the following inferences:
> (a) If there was at that time an alcohol concentration of 0.05 or less, it may be inferred that the person was not under the influence of alcohol.
> (b) If there was at that time an alcohol concentration in excess of 0.05 but less than 0.10, that fact shall not give rise to any inference that the person was or was not under the influence of alcohol but such fact may be considered with other competent evidence in determining the guilt or innocence of the person.
> (c) If there was at that time an alcohol concentration of 0.10 or more, it may be inferred that the person was under the influence of alcohol. The inference is rebuttable.
> (5) The provisions of subsection (4) do not limit the introduction of any other competent evidence bearing upon the issue of whether the person was under the influence of alcohol, drugs, or a combination of the two.

24

**61-8-402.** (1) A person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent, subject to the provisions of 61-8-401, to a test or tests of the person's blood, breath, or urine for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body <u>if arrested by a peace officer for driving . . . a vehicle while under the influence of alcohol</u>[.] [Emphasis added.]

**45-5-205.** (1) If a person operates a motor vehicle in a negligent manner <u>and he is driving while under the influence of alcohol</u> . . . as provided for in 61-8-401(1), and his conduct is the cause of bodily injury to another, he commits the offense of negligent vehicular assault. [Emphasis added.]

I emphasize the fact that defendant Greg Stueck was not arrested for the offense of driving while under the influence of alcohol.

The District Court erroneously concluded that, because the negligent vehicular assault statute requires that the accused must be operating a motor vehicle in a negligent manner and driving while under the influence of alcohol, the statute necessarily requires compliance with § 61-8-402, MCA, the so-called implied consent statute. The majority of this Court also engages in that erroneous analysis. Both the District Court and the majority of this Court have engaged in faulty logic.

Section 61-8-402, MCA, the implied consent statute, applies only if the accused is arrested by a peace officer for driving a vehicle while under the influence of alcohol. This is clearly not the fact in the present case. Stueck was not arrested for driving under the influence of alcohol.

The inferences relating to alcohol concentration in a person's body as set forth in § 61-8-401, MCA, are rebuttable inferences

only and, as in that section provided, proof of such alcohol concentration is not the only method by which a conviction for operating a motor vehicle while under the influence of alcohol can be obtained. Any other competent evidence bearing on that issue may be introduced and may result in a conviction.

State v. Thompson (1984), 207 Mont. 433, 674 P.2d 1094, is clearly on point in this case, and the efforts of the majority to distinguish Thompson are misplaced. The operative facts in Thompson are virtually identical to the facts of this case. The fact that Thompson's drunken driving resulted in a homicide cannot be legally distinguished from the facts in this case. Stueck's driving may well have resulted in a homicide instead of a bodily injury to Mr. Troth. The legal principles set forth in Thompson are applicable here.

I would reverse the decision of the District Court.

_____
Chief Justice

December 9, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Hon. Joseph P. Mazurek, Attorney General
Barbara Harris, Assistant
Justice Building
Helena, MT 59620

Jane Mersen
Deputy County Attorney
Gallatin County Attorney's Office
615 South 16th Avenue
Bozeman, MT 59715

Karl Seel
College Park Professional Center
1705 W. College, Suite A
Bozeman, MT 59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy